EDWARD CHARLES CURTIS, appellant, v. JOHN E. BENNETT, warden, Iowa State Penitentiary, et al., appellees.

No. 51380.

(Reported in 131 N.W.2d 1)

OCTOBER 20, 1964.

Edward Charles Curtis, appellant, pro se.

Evan Hultman, Attorney General, and John H. Allen, Assistant Attorney General, for appellees.

LARSON, J.—Appellant, a prisoner in the state penitentiary at Fort Madison, petitioned the district court of Lee County for a writ of habeas corpus directed to the warden of the penitentiary. The court denied the writ and applicant has appealed.

On August 3, 1960, appellant was convicted of the crime of breaking and entering in the district court of Clinton County and was sentenced to an indeterminate term not to exceed ten years in the penitentiary. He raised no question as to the legality of that conviction and sentence.

Appellant was paroled from that institution July 20, 1962, and was placed in the employment of his father-in-law, a resident of East Moline, Illinois. On or about April 3, 1963, appellant's parole was revoked by the issuing authority, the Iowa Board of Parole, and he was returned to the penitentiary.

On November 8, 1963, applicant filed a petition for a writ of habeas corpus alleging that he had been placed on parole in Illinois under a fraudulent parole agreement, that the agreement was not carried out under the provisions of an existing Iowa-Illinois Interstate Parole Compact, that his parole was wrongfully and illegally revoked and he was abducted from the State of Illinois by an Iowa parole agent. He further alleged that his constitutional rights were breached by a failure to provide him a hearing to test the legality of the revocation, and that he was not furnished counsel before the board's action revoking his parole and returning him to the penitentiary. In this petition he asked that a full evidentiary hearing be granted him setting out what he contends the evidence would prove. While petitioner alleged some sort of conspiracy between an Iowa parole agent and his father-in-law to place him in the employment of his father-in-law, calling it "slavery", he stated that this employment did not last for any length of time, and from the exhibits attached to his petition it appears he was subsequently employed by several other parties and that he was unemployed and on relief for some extended period of this parole. He also conceded that he was arrested on suspicion of burglary in East

Moline, Illinois, but stated he was not formally charged with the crime. It is clear from this petition that the results of his parole or probation were not all the Iowa Board of Parole had hoped for or contemplated.

After appellant's petition for a writ was denied without an evidentiary hearing on November 8, 1963, and he had appealed, he applied to the district court for appointment of counsel to assist him in this appeal. It was denied and he proceeded pro se.

I. Appellant raises two questions in this appeal—first, whether he had a constitutional right to notice and hearing before the board of parole could revoke his parole, and second, whether the statutes require such a notice and hearing before revoking his parole and before he may be returned to the institution from which he was paroled. Both of these questions have previously been answered in the negative in this state, although nationally on the constitutional question there is a split of authority. See 29 A. L. R.2d, annotation, 1076, 1077, 1078, 1084.

Iowa is among the majority of states which have consistently held that under statutes relating to revocation of probation or suspension of sentence which contain no express provision for notice and hearing, such a revocation without notice and hearing does not constitute a denial of due process. Pagano v. Bechly, 211 Iowa 1294, 232 N.W. 798; Ex parte Davis, 37 Cal.2d 872, 236 P.2d 579; People v. Dudley, 173 Mich. 389, 138 N.W. 1044; Re Kuney, 168 Misc. 285, 5 N. Y. S.2d 644. Also see Lint v. Bennett, 251 Iowa 1193, 104 N.W.2d 564, and citations. In Pagano v. Bechly, supra, it was the claim of plaintiff that he had vested rights by reason of his parole of which he could not be deprived under the constitution without notice and an opportunity to be heard, but this court said on page 1298 of 211 Iowa, page 800 of 232 N.W.: "It being a matter of grace and forbearance on the part of the sovereign, the defendant acquired no vested rights, and therefore, under the statutory provisions. [same as now], he would not be entitled to notice and opportunity to be heard."

In support of the view that there is no constitutional right to notice and hearing before revocation of suspension of sentence (Lint v. Bennett, supra), probation or parole (Pagano v. Bechly,

supra), most courts hold that conditional liberty after conviction is an act of grace or clemency extended by the trial court or the state, conferring no vested rights upon the convict and subject to withdrawal at the discretion of the granting authority (our view), or that such conditional liberty does not free the convict from service of his sentence but merely extends the prison walls so as to allow him to serve such sentence outside the prison while remaining in the custody of the court or prison authorities and subject to their disciplinary control, or that the convicted person having been given full constitutional protection at the trial when he was convicted, the presumption of his innocence disappears and his status is that of an escaped felon, and the constitutional guaranties given a person accused of crime do not extend to subsequent enforcement of validly imposed punishments. Others hold conditional liberty after conviction is in the nature of a contract between the convicted person and the granting authority which the convicted person is free to accept or reject, the terms of which, including a provision for summary or ex parte revocation, are binding upon the convicted person on acceptance. These views, as well as the view that they create vested rights in the convict, were fully discussed in Anderson v. Alexander, warden, 191 Ore. 409, 229 P.2d 633, 230 P.2d 770, 29 A. L. R.2d 1051. Under any of these views we are satisfied petitioner failed to allege valid grounds for the writ.

II. The Iowa statutes do not provide for such a hearing before the parole board. The board is given no power to issue subpoenas or swear witnesses. There is nothing in the statutes which expressly or by implication requires the board to enter findings of fact of the kind made by judicial bodies. The absence of such provisions shows the legislature did not intend that the board should conduct any such hearings. In other words, the Iowa statutes contemplate that the board of parole shall be guided by the information which shall become available to it through its own investigative procedures. It is thus an administrative function rather than judicial. When the board grants a prisoner a parole, it does so as a matter of grace and not as a duty. It has the right to impose such conditions as it feels

proper and, when the prisoner accepts the parole, he does so subject to its terms and conditions. He cannot later in a judicial hearing complain as to their fairness or propriety. Woodward v. Murdock, 124 Ind. 439, 24 N.E. 1047. True, while the legality of his confinement may be inquired into by habeas corpus, to obtain relief petitioner must allege and prove such things as that he is not the party intended, that the revocation is a forgery, or that the officials attempting to revoke it are without authority. This he did not do, and we conclude the board's discretion in this instance is not reviewable in the courts by habeas corpus. State ex rel. Davis v. Hunter, 124 Iowa 569, 100 N.W. 510, 104 Am. St. Rep. 361.

Section 247.5, Code, 1962, provides power to parole in the board of parole, except in certain cases not applicable here. It also provides that the parole may be to a place outside the state, as was done here pursuant to an existing interstate compact, which included a provision in reference to supervision on parole and a provision for the reciprocal return of such persons for the violation of the terms of their parole or probation.

Section 247.6 gives the board "power to establish and enforce the rules and conditions under which paroles may be granted."

Section 247.9 provides: "All paroled prisoners shall remain, while on parole, in the legal custody of the warden or superintendent and under the control of said board, and shall be subject, at any time, to be taken into custody and returned to the institution from which they were paroled."

Section 247.10 grants authorization of interstate compacts for the return of a parolee when the terms of his parole or probation are violated.

Section 247.13 provides the board with the power to make its own investigation as to the fitness and progress of one granted a parole.

Section 247.28 provides an additional penalty for a willful violation of a parole, but we have held a prosecution under this provision is not a necessary condition precedent to a revocation of the parole. Lint v. Bennett, supra, 251 Iowa 1193, 1197, 104 N.W.2d 564, 567.

■ From applicant's own petition we learn that the parolee soon lost the employment with his father-in-law and failed to secure suitable or permanent employment elsewhere, perhaps through no fault of his own, that he did go on relief for some extended periods, and that he was suspected of the crime of burglary. Under these conditions duly brought to the board's attention, its action was proper in concluding that the circumstances were not conducive to the parolee's rehabilitation and eventual discharge. These facts seemed to indicate a return to the institution might well save him from further crime. This was for the board solely to decide, but even if it were subject to review we find no facts related which would justify the court in holding his parole was revoked arbitrarily.

When the statutory provisions directing the board of parole to make investigations and authorizing it to find a breach of its rules and act to revoke the convict's parole in its discretion are considered in their context, we think it clear, as a matter of statutory construction, that the board was empowered to act upon the information which it had received from its various reports and investigations and to revoke the parole of the prisoner without a notice and hearing.

■ III. Where it appears from petitioner's application that he is not entitled to a writ of habeas corpus, no evidentiary hearing is required. As in any litigation, the pleadings may show either separately or taken together that there is no claim. Therefore, unless the factual allegations proven would require that a writ be granted, no evidentiary hearing is necessary or proper. Brown v. Allen, 344 U. S. 443, 505, 73 S. Ct. 397, 97 L. Ed. 469.

To require an evidentiary hearing on "issues of fact", such facts must be those material, basic, primary or historical facts that have a bearing on the primary issue—in this case, whether the parole board had exercised its power to revoke applicant's parole after its own investigation regardless of a notice and hearing to the parolee. Townsend v. Sain, 372 U. S. 293, 83 S. Ct. 745, 755, 9 L. Ed.2d 770.

■ IV. The petitioner's request for a court-appointed counsel to aid him in this appeal was properly denied. He does not argue this proposition in his brief and it is deemed waived.

Rule 344(a) (4) (Third), Rules of Civil Procedure; Ver Steegh v. Flaugh, 251 Iowa 1011, 1026, 103 N.W.2d 718, 727, and citations. However, we will say no reversible error occurred by this denial. When applicant's petition failed to establish any cause for the issue of the writ, the most able counsel would avail him nothing in this appeal. An evidentiary hearing on matters not material to this action, even if they disclosed irregularities in the granting of this parole, would not alter the result.

V. Since there is no provision in our Code for a court review of the board of parole's discretionary action in granting or revoking his parole, the court could not under any circumstances grant him the relief demanded, i.e., reinstate his parole. At best, the court could only free him or sustain the warden's custody. The law under our statute, as shown by the decisions of this court, is against the contentions of appellant, and the district court must be affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.