**Robert Leroy HACKETT, Petitioner-Appellant,**

v.

**STATE of Iowa, Respondent-Appellee.**

**No. 83–1022.**

Court of Appeals of Iowa.

June 26, 1984.

Alan N. Waples of Wittkamp & Waples, Burlington, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for respondent-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

The petitioner, Robert Leroy Hackett, appeals from the district court's denial of habeas corpus relief. Hackett asserts that his parole revocation hearing was not held within a reasonable time after his arrest and detention for a violation of parole. We affirm.

Hackett was paroled from the Iowa State Penitentiary in May, 1982. The State of South Dakota was designated to supervise his parole. Hackett was arrested on December 30, 1982, in South Dakota for driving while intoxicated. A detainer was issued on December 31, 1982, alleging Hackett was in violation of the terms and conditions of his parole. Hackett subsequently entered a plea of guilty to a lesser charge of reckless driving. The South Dakota parole officer's report to the interstate compact administrator indicated that Hackett pleaded guilty to the charge of driving while intoxicated on January 3. The trial court found after a hearing that he entered a plea of guilty to reckless driving on January 12. In any case, a preliminary hearing on revocation of parole was held in South Dakota on January 12 and it was determined that reasonable grounds existed to believe that Hackett had violated his parole.

Hackett was returned to the Iowa State Penitentiary on January 28, 1983. The Iowa Board of Parole held a revocation hearing on April 5, 1983, and revoked Hackett's parole. This was 95 days after the detainer had originally been filed.

The record shows that Hackett received notice of the parole revocation hearing on March 29, 1983. Hackett's pro se petition for writ of habeas corpus recites that "as of this 1st day of April, 1983 ..." he had not been afforded a revocation hearing. The petition also recites that it was executed on April 1, 1983. The parole board apparently orally revoked Hackett's parole at the parole revocation hearing on April 5. No appeal on the grounds asserted here was taken by petitioner from the board decision, nor was any reason given for his failure to appeal.

Hackett's petition for writ of habeas corpus was subsequently filed with the district court on April 15, 1983. He testified that he had mailed the petition on April 2. There is no evidence in the record concerning the discrepancy between the execution date and the filing date.

Hackett represented himself at the district court hearing on his application for a writ of habeas corpus. The district court held that under the circumstances of this case the revocation hearing was held within a reasonable time following the arrest and detention.

I. The petition for a writ of habeas corpus was filed in this case after the board of parole held its revocation hearing. Iowa Code section 663A.1 (1981) provides that the provisions of the chapter on habeas corpus do not apply to persons convicted of, or sentenced for, a public offense. Postconviction is the exclusive remedy in those situations. *Kelly v. Nix*, 329 N.W.2d 287, 290 (Iowa 1983). The postconviction procedures of Iowa Code section 663A specifically apply to persons who have been convicted of, or sentenced for, a public offense and who claim that their probation, parole or conditional release has been unlawfully revoked. Iowa Code § 663A.2(5). However, this court does not lose jurisdiction of the case simply because the pleading in this action should have been labeled as a postconviction proceeding. *Id.* at 290. *Compare McElhaney v. Auger*, 238 N.W.2d 797, 799 (Iowa 1976) (statutory postconviction procedure is an implementation of the right of habeas corpus).

Finally, the State does not challenge Hackett's failure to appeal the board action revoking his parole. *See Frazee v. Iowa Board of Parole*, 248 N.W.2d 80, 82 (Iowa 1976). Accordingly, we reach the merits of Hackett's claim.

II. Proceedings in a postconviction relief action are special proceedings treated as an action at law. *Kelly v. Nix*, 329 N.W.2d at 291. We review the case de novo in light of the totality of the circumstances where there are fundamental constitutional rights involved. *Id.* at 291. The burden of proof is on the petitioner to establish the facts by a preponderance of the evidence. *Id.* at 291.

III. The constitutional requirements for parole revocations were laid down in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The court in *Morrissey* mandated a two-step procedure to be followed in parole revocations; an initial hearing to determine if reasonable ground exists for revocation of parole and an opportunity for a hearing, if desired by the parolee, prior to the final decision on revocation by the parole authority. *Id.* at 485-89, 92 S.Ct. 2602-04, 33 L.Ed.2d 496-99. There is no question that Hackett received both a preliminary hearing to determine reasonable cause for parole revocation in South Dakota and a subsequent parole revocation hearing before the Iowa Board of Parole. The court in *Morrissey* goes on to say, in reference to the second step, that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488, 92 S.Ct. 2603-04, 33 L.Ed.2d 498. Hackett urges that "reasonable time" should be interpreted to mean no longer than three months. The parole revocation here was held 95 days after his parole officer in South Dakota filed the detainer for his alleged parole violation.

The Iowa Supreme Court stated in *Thomas v. State Board of Parole*, 220 N.W.2d 874, 877 (Iowa 1974), as follows:

> Depending upon the circumstances of the case and of the nature of the alleged parole violations, the time lapse from arrest to revocation hearing may in some cases be less than two months while in other cases it may not be reasonably practical to have the hearing precisely within two months. We cannot fix a specific number of days for all cases. The board should act with reasonable celerity. The time lapse must not be unreasonable. Each case depends upon its own facts. Under the facts of this case, we cannot say the time lapse was unreasonable.

Therefore, we reject any attempt to fix a specific number of days after which it would, in all cases, be an unreasonable time lapse.

The parole and probation revocation procedures in Iowa are modeled on our preconviction procedures. *State v. Dowell*, 297 N.W.2d 93, 96 (Iowa 1980). The alleged defect in this case occurred after the probable cause stage and is analogous to a violation of statutory speedy trial rights. Denial of statutory speedy trial rights requires dismissal with prejudice. *State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1974). *See State v. Dowell*, 297 N.W.2d at 97 (a violation in the adjudication stage ordinarily affects the merits of the charge).

Iowa Rule of Criminal Procedure 27(2)(b) provides that when a defendant has not waived his right to a speedy trial he must be brought to trial within ninety days after indictment is found or the court must order the indictment dismissed. The provisions of Iowa Code section 908.7 (1981), which are applicable here, adopt the standard of reasonableness of delay as set out in *Morrissey* and not a specific time period. Thus, while analogy to the statutory speedy trial rights in Iowa Rule of Criminal Procedure 27(2) is helpful in understanding the purpose of Iowa Code section 908.7, the statutory standards for determining speedy trial and speedy parole revocation hearings are different. *See State v. Dowell,* 297 N.W.2d at 96 (application of definition of "unreasonable delay" in preconviction procedure to probation and parole revocation preliminary hearing).

■ The State persuasively argues that we should adopt by analogy to speedy trial rights the constitutional balancing test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine the reasonableness of the delay in parole revocation cases. *See United States v. Companion,* 545 F.2d 308, 311 (2nd Cir. 1976). The Supreme Court in *Barker* identified four factors to be considered in determining whether a criminal defendant has been denied his constitutional right to a speedy trial. These were the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The court noted that these factors are related and must be considered together with other circumstances as may be relevant. *Id.* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

The delay in this case on Hackett's parole revocation hearing was 95 days. As Hackett notes, it has been stated that three months is generally recognized as the outer limits of delay tolerated in parole revocation hearings. *United States ex rel. Hahn v. Revis,* 520 F.2d 632, 638 n. 5 (7th Cir. 1975); *Marchand v. Director, United States Probation Office,* 421 F.2d 331, 335 n. 5 (1st Cir.1970). We have rejected the application of mechanical rules based on length of time. However, we find that the length of the delay is enough to require inquiry into the surrounding circumstances of this case.

■ Hackett asserts that the parole board should have held a hearing on his case on February 8–10 when they conducted proceedings on other parole revocations at the penitentiary. Nothing appears in the record showing why the parole board did not hear Hackett's case at that time. Hackett was returned to the penitentiary from South Dakota on January 28, several days prior to the proceedings. The parole board's schedule for holding parole revocation hearings at the penitentiary was not introduced into the record, but it appears that Hackett's hearing was held at the next bimonthly meeting of the board at the penitentiary. *See* Iowa Admin.Code ch. 615 § 7.6(2). The reason for the delay was not established.

The record shows that Hackett did not affirmatively seek the parole revocation hearing until the end of the three month period. He prepared his application for a "writ of habeas corpus" only after he had received notice that his parole revocation hearing had been scheduled. His application was not filed in the clerk's office until after the hearing in which the board revoked his parole.

Finally, the prejudice suffered by Hackett, as demonstrated by the record, is not substantial. The most significant loss suffered by Hackett was his imprisonment during the period of time prior to the parole revocation hearing. The State asserts that because the parole revocation was based on Hackett's guilty plea to a crime in South Dakota the parole board's role at the parole revocation hearing was limited, and therefore, Hackett suffered no prejudice. *See Creech v. United States,* 538 F.2d 205, 208 (8th Cir.1976). Hackett, on the other hand, asserts that the parole board's decision was based on his possession of marijuana seeds and the fact that he was driving while intoxicated, not on his guilty plea

to the crime of reckless driving. The record does not contain a copy of the parole board's decision nor testimony stating the basis for the parole board's decision. Under this record it is impossible for us to evaluate the role of the parole board at the revocation hearing to determine the extent of prejudice to Hackett resulting from the delay.

However, Hackett does not assert that his ability to defend against the alleged parole violations or to present evidence of mitigating circumstances was in any way prejudiced by the 95-day delay. His primary ground for reversal is his argument that any delay over three months is per se unreasonable. We have found that argument to be without merit. Accordingly, we find that Hackett suffered no prejudice upon this record.

Hackett had the burden of proof in this postconviction action to show that the 95-day delay in holding his parole revocation hearing was unreasonable. He has failed to sustain that burden. Under the facts of this case as shown in the record, we cannot say the time lapse was unreasonable.

AFFIRMED.